UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CIVIL RIGHTS COMPLAINT FORM
TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983

WILBERT R. HURST
Inmate # U22029
Plaintiff

AMENDED COMPLAINT

vs.

CASE NO: 4:19cv234-WS-HTC

MARK S. INCH,
Secretary of the Florida
Department of Corrections
Defendant
_____/

ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES

LEGAL MAIL
Provided to
Wakulla CI

FILED USDC FLND TL
JUL 22 '19 PM4:35

JUL 19 2019

FOR MAILING _____ WH

**I.   PLAINTIFF:**

State your full name, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:   **WILBERT RAYFIELD HURST**

Inmate Number:   **U22029**

Prison or Jail:   **Wakulla C.I. Annex**
Mailing address   **110 Melaleuca Drive**
**Crawfordville, Florida 32327**

**II.   DEFENDANT(S):**

State the name of the Defendant in the first line, official position in the second line, place of employment Notice of Inquiry the third line, and mailing address. Do the same for **every** Defendant:

(1)   Defendant's name:   **MARK S. INCH**

   Official position:   **Secretary**

   Employed at:   **Florida Department of Corrections**

   Mailing address:   **501 S. Calhoun Street**
   **Tallahassee, Florida 32399-2500**

(2)   Defendant's name:   _____

   Official position:   _____

   Employed at:   _____

   Mailing address:   _____

(3)   Defendant's name:   _____

   Official position:   _____

   Employed at:   _____

   Mailing address:   _____

**ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS**

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.

**Plaintiff has exhausted all available remedies related to the claim herein**

## IV. PREVIOUS LAWSUITS

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOUR ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A. Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?

Yes( )   No(✓)

1. Parties to previous action:
   - (a). Plaintiff(s): N/A
   - (b). Defendant(s): N/A
2. Name of judge: N/A   Case #: N/A
3. County and judicial circuit: N/A
4. Approximate filing date: N/A
5. If not still pending, date of dismissal: N/A
6. Reason for dismissal: N/A
7. Facts and claims of case: N/A

**(Attach additional pages as necessary to list state court cases.)**

B. Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?

Yes( )   No(✓)

1. Parties to previous action:
   - (a). Plaintiff(s): N/A
   - (b). Defendant(s): N/A
2. District and judicial division: N/A
3. Name of judge: N/A   Case #: N/A
4. Approximate filing date: N/A
5. If not still pending, date of dismissal: N/A
6. Reason for dismissal: N/A
7. Facts and claims of case: N/A

**(Attach additional pages as necessary to list state court cases.)**

3

C. Have you initiated other actions (*besides those listed above in Questions (A) and (B)*) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

**Yes(✓)**        No ( )

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1. Parties to previous action:
   - (a). Plaintiff(s): __Wilbert R. Hurst__
   - (b). Defendant(s): __Whitney A. Flesher, et al__
2. District and judicial division: __Northern District of Florida (Tallahassee)[1]__
3. Name of judge: __Charles A Stampelos__        Case #: __4:19cv244-WS/CAS__
4. Approximate filing date: __May 23, 2019__
5. If not still pending, date of dismissal: __Still Pending__
6. Reason for dismissal: __N/A__
7. Facts and claims of case: __Retaliation for free speech and writing grievances; Equal Protection; Cruel and Unusual Punishment__

**(Attach additional pages as necessary to list cases)**

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1. Parties to previous action:
   - (a). Plaintiff(s): __Wilbert R. Hurst__
   - (b). Defendant(s): __Centurion of Florida, et al,__
2. District and judicial division: __Northern District of Florida (Tallahassee)__
3. Name of judge: __Charles A Stampelos__        Case #: __4:18cv237-RH/CAS__
4. Approximate filing date: __Third Amended Complaint, March 04, 2019__
5. If not still pending, date of dismissal: __Still Pending__
6. Reason for dismissal: __N/A__
7. Facts and claims of case: __Deliberate Indifference; Cruel and Unusual Punishment; 84 days delay in receiving surgery__

**(Attach additional pages as necessary to list cases)**

D. Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed:

Yes( )        **No(✓)**

1. Parties to previous action:
   - (a). Plaintiff(s): __N/A__
   - (b). Defendant(s): __N/A__
2. District and judicial division: __N/A__
3. Name of judge: __N/A__        Case #: __N/A__
4. Approximate filing date: __N/A__
5. Reason for dismissal: __N/A__

---

[1] This action is pending transfer to the Middle District of Florida

6.      Facts and claims of case:_____N/A_____
**(Attach additional pages as necessary to list cases)**

## V. STATEMENT OF FACTS:

State briefly the FACTS of this case. Describe how <u>each</u> Defendant was involved and what each person did or did not do which gives rise to your claim. In describing what happened, state the names of persons involved, dates, and places. <u>Do not make any legal arguments or cite to any cases or statutes.</u> You must set forth separate factual allegations in separately numbered paragraphs. You may make copies of this page if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached. **(If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)**

1. The Defendant MARK S. INCH and his agents, and staff members mentioned herein are employees or agents of Defendant and acted within the scope of their employment or agency at all relevant times, and their actions were performed under color of state law and constitute state action.

2. Defendant MARK S. INCH is sued in his individual and official capacity for injunctive and declaratory relief, and as such may be referred to herein as the Florida Department of Corrections or the "FDC."

3. Started in 2011 in select facilities, the stated purpose of the FDC's Digital Music Player Program was to provide a secure method by which FDC prisoners could browse, select, purchase and download digital content to specialized digital media (MP3/MP4) players made explicitly for use by inmates in a correctional setting.

4. In or about 2014, the FDC decided to expand the program, attempted to secure a single contractor for the provision and operation of its Digital Music Player Program statewide. As such, the FDC invited proposals from qualified vendors that had experience in the provision of large-scale MP3 player program services in correctional or other security and law enforcement settings.

5. As part of this bidding process both the FDC's Invitation to Negotiate Contractual Services as well as the FDC's Request for Proposal for Contractual Services, explicitly stated that compatibility with the FDC's prior vendor was a mandatory requirement of the contract, in order to ensure that prisoners would not bear the cost of the transition between vendors:

> "[The] proposed system must allow for inmates who currently have a device and / or songs purchased from the current contractor to transfer and / or obtain updated equipment and / or music compatible with the successful contractor's Digital Music Player Program. It is the intent of the Department that the implementation of the new Digital Music Player Program to have little or no financial impact on inmates presently participating in the Department's current program."

6. In or about 2014, pursuant to these guidelines, the FDC granted the Digital Music Player Program contract to Keefe Commissary Network, LLC, doing business as Access Corrections.

7. Under the Digital Music Player Program, FDC prisoners had the ability to purchase one of two specially designed media players, for either $99.95 or $119.95, as well as various accessories for the players, including ear-buds ($16.00), armbands ($15.00), and screen protectors ($6.00). Plaintiff purchased the MP4 for the price of $119.95, including the armband and screen protectors.

8. Under the Digital Music Player Program, FDC prisoners/plaintiff also had the ability to purchase digital media files - including music, for use with the specially designed media player, using funds from

their inmate accounts. In order to purchase digital media files-available to FDC prisoners/plaintiff were required to purchase blocks of "per-paid media credits" which required FDC prisoners/plaintiff to purchase songs in units of five, at a minimum cost of $8.50 per unit.

9. Plaintiff purchased these blocks of credits using a "Florida Department of Corrections MP4 Order Form," which was available to each FDC institution, including Union Correctional Institution. These forms were then picked up and processed by "Access Corrections" representatives, on a bi-monthly basis, acting on behalf of, and at the direction of the FDC.

10. Plaintiff could then use these prepaid credits by securely connecting the digital media player to a kiosk at the institution, allowing him to access the MP3/MP4 Player Music Library and download available files or songs to a cloud-based library reserved for FDC inmate's use.

11. Plaintiff could also use the kiosks to transfer his downloaded digital media files from the cloud-based library to his specific digital player device. While FDC prisoners/plaintiff could only transfer the number of digital media files that would fit within the memory capacity of his digital media player, there was no limit on the number of credits, files, or songs that an FDC prisoner could purchase, own, or maintain in their cloud-based library.

12. In order to utilize media player, FDC prisoners/plaintiff were also required to connect their players to one of the kiosks at their FDC institution at regular intervals, in order to extend the device's security timer. IF an FDC prisoner failed to, or was unable to connect his or her digital media player to a kiosk every certain number of days,[2] the digital media player would be automatically disabled, in order to prevent fraudulent use of the device as well as its use outside of the FDC's facilities.

13. Pursuant to the FDC's rules and regulations, at all relevant times, FDC prisoners/plaintiff were not permitted to purchase, obtain, or otherwise own any digital media player other than the one offered by, and purchased through, the Digital Music Player Program, nor were FDC prisoners permitted to purchase, obtain, or otherwise own any digital media files other than those offered by, and purchased through, the Digital Music Player Program.

14. In order to encourage prisoners to purchase digital media players, digital media files, and accessories, the FDC published numerous advertisements that were posted in various FDC institutions, and they were posted in strategic locations such as in the visitation areas to induce family members of the prisoners to purchase a device; some were posted by the canteen window, specifically targeting those who get money coming in their accounts, and of course, the advertisement were posted in all the housing areas of the FDC institution, and the advertisements were provided to prisoners. Those advertisements touted various qualities of the digital media players offered by the FDC, including their memory capacity, or operating power, and screen size. The screen size of the MP4 Player was larger, so they touted the device's photo feature, which incidentally, never got off the ground. It also touted the device's capacity to send and receive email; another program that never got off the ground.

15. In addition to touting the qualities of the digital media players themselves, at least one widely-distributed advertisement, which appeared on the digital media player order form itself, also touted various qualities of the Digital Music Player Program, including the following representation:

> "Browse, search and preselect songs from updated music catalogs holding millions of song titles representing a wide array of music genres. You have the ability to purchase and listen to unlimited music utilizing the re-download feature free of charge. <u>Once music is purchased, you'll always own it!</u>" (emphasis supplied)

---

[2] It started off at 30 days, but was increased to 90 days

16. This representation was made by the FDC to Plaintiff, and all participating FDC prisoners, to induce them into purchasing digital media files.

17. This advertisement also include information about restrictions that the FDC placed on the purchase, or use of digital media players and / or files purchased through the Digital Music Player Program pursuant to its internal rules and regulations. Notably, the same administrative that promised participating FDC prisoners that they would "always own" the digital media files they had purchased listed only one restriction - that each FDC prisoner was only permitted to possess one digital media player at any given time.

18. Similarly, the FDC repeatedly represented to prisoners that they were permitted to delete and re-order digital media files that they had purchased from the cloud-based library, at any time and at no additional cost. In explaining this system, the user guide that accompanied many of the digital media players emphasized this re-ordering capability, and explicitly stated that prisoners would never have to purchase the same song or book twice:

> "You can delete and re-order songs as often as you want. You will never be charged for a song that is ordered from the re-order manager. After all, you have already paid for the song once; we don't think you should ever have to pay again." (emphasis supplied)

19. Because of the above mentioned inducement from the above mentioned advertisements order forms, and / or user guides, plaintiff WILBERT R. HURST purchased a MP4 Player digital media files, and accessories from "Access Corrections" through the FDC, at a total cost of $2,311.01 - from the dates March 26, 2014 to his final purchased on July 5, 2017.

20. Upon information and belief, none of the materials provided to FDC prisoners regarding the operation of the Digital Music Player Program suggested or informed participating FDC prisoners that their digital media files purchased would only be available for use during the span of the FDC's contract with Access Corrections, including, but not limited to, notices, advertisements, order forms, and / or user guides.

21. Similarly, upon information and belief, none of the FDC's internal rules or regulations ever suggested or informed participating FDC prisoners that their digital media file purchases would only be available for use during the span of the FDC's contract with Access Corrections.

22. Based in no small part on the belief by FDC prisoners that any purchases they made through the Digital Music Player Program could be accessed at least for the duration of their incarceration with the FDC, the Digital Music Player Program was a financial success for the FDC.

23. From 2011 to 2017, FDC prisoners purchased approximately 6.7 million digital media files through the Digital Music Player Program, at a cost of roughly $11.3 million to those prisoners and their families, while the FDC, itself realized approximately $1.4 million in commissions on these sales during the same time period.

24. FDC prisoners/plaintiff purchased these electronic media files specifically to listen to them in prison. Plaintiff purchased his MP4 Player for his enjoyment. Prison can be a stressful environment, especially those with psychiatric issues such as this plaintiff, who has had difficulty dealing with stress. Plaintiff purchased these songs for his benefit to alleviate some of the stress and difficulties that come with prison life.

25. In April 2017, the FDC terminated its contract with "Access Corrections" and entered into a new contract with a competing vendor - JPay, Inc. - that allows the FDC to realize even higher margins.

26.  In order to implement its new contract, the FDC ended the Digital Music Player Program and began to transition to the current Multimedia Tablet Program.

27.  Under the Multimedia Tablet Program, the FDC offers two multimedia tablets for sale to FDC prisoners, for either $79.99 or $129.99 depending on the screen size of the tablet. Similar to the previous program, the Multimedia Tablet Program also allows prisoners to purchase digital music and other files and listen to those files on their tablets.

28.  However, the Multimedia Tablet Program came with a significant downside for all prisoners who participated in the previous program: they would be required to surrender their digital media players to the FDC and lose access to all of their digital music and books, regardless of whether they chose to participate in the Multimedia Tablet Program or not.

29.  In order to implement the Multimedia Tablet Program, the FDC first cut off access to those prisoners' cloud-based libraries in January 2018, preventing them from downloading their own previously purchased music and books.

30.  Then, pursuant to the Multimedia Tablet Program, the FDC has forced, and is forcing, all FDC prisoners who had participated in the previous Digital Music Player Program to surrender their lawfully purchased digital media players - including all of the digital media files on the player - to the FDC, on the date they received a new tablet under the Multimedia Tablet Program. For those prisoners who chose not to receive a new tablet, the FDC at a deadline of January 23, 2019 to surrender their digital media player.

31.  Pursuant to the Multimedia Tablet Program, on the date that the FDC forces a prisoner to surrender their digital media player and files, that prisoner is given the option to mail their digital media player to Access Corrections to have the security timer removed and mailed to someone outside of prison (for a fee of $24.95), or have the digital media files that were stored on the player transferred to a CD and then mailed to someone outside of prison (for the same fee).

32.  The option to send the player and / or files to someone outside of prison does not cure the problem. As noted above, plaintiff purchased the digital player and music to listen to and enjoy while he is in prison - not at some unspecified time in the future. Further, plaintiff is serving a life sentence, and his family has no use from an outdated obsolete MP4 Player. There is simply better technology since the MP4 Player wave. So sending the device home in plaintiff's situation is completely illusory.

33.  Moreover, upon information and belief, for the digital media files that were stored in the prisoner's cloud-based library, but not on their digital media player, there was no option to retrieve them and to send them to someone outside of prison; plaintiff had at least 15-25 of these files in the cloud-based library, and these files were simply gone forever.

34.  Despite previous assurances from the FDC that prisoners would "always own" the digital media files they had purchased under the previous program, the FDC did not permit prisoners to transfer any of the digital media files that they had purchased under the previous program to the new multimedia tablets, regardless of whether such digital media files were contained on the prisoner's digital media player itself or in the prisoner's cloud-based library.

35.  If prisoners want to listen to the digital music and books they had under the previous program, they are required to re-purchase them under the current Multimedia Tablet Program. So despite the language indicating that "they don't think that the songs should ever be paid for again, plaintiff had to purchase about 1,000 of his previously purchased songs already. As stated above, some of the songs are not offered by the new vendor.

36.  In order to incentivize prisoners to participate in the Multimedia Tablet Program, the FDC offered the multimedia tablets to all prisoners at a 50% discount for the first 60 days of availability. Prisoners who

had purchased a digital media player under the previous program also had the opportunity to obtain a multimedia tablet during the same time period, at either no cost (a $40 discount) or for $50.00 (a $15 discount), depending on the screen size of the tablet, and were also supposed to receive a $10.00 media credit with two weeks of placing the tablet order.

37. These same incentives were offered to all FDC prisoners who had purchased a digital media player through the previous Digital Music Player Program, regardless of the number of digital media files any particular inmate had purchased or the value of such property at the time of its confiscation by the FDC. The FDC offered no other compensation for the taking of these digital media player and digital files.

38. Since the implementation of the Multimedia Tablet Program, FDC prisoners have written hundreds of grievances and administrative appeals complaining about the arbitrary confiscation of their property without compensation except for the discount of purchasing the tablet. The FDC, through its Bureau of Contract Management, has denied all such grievances and appeals including the grievance and appeal filed by plaintiff.

39. In response to the outpouring of grievances and appeals, the FDC developed standard response language. That language acknowledges the significant investment that FDC prisoners and their families have made in the Digital Music Player Program, stating, *inter alia,* "we understand that some inmates have made a significant investment in music with their current digital media players," and "we are aware that family members over the years have provided funds for their loved one to add music to their current MP3 player."

40. Despite these acknowledgements, the FDC has denied all such grievances and appeals and continues to move forward with the Multimedia Tablet Program, without modification.

41. Moreover, the FDC has even explicitly admitted that the confiscation of lawfully purchased property without compensation was done to allow FDC and its new vendor to realize additional profits, stating in several grievance responses that the confiscation of all prisoners' digital media files is "necessary" because "the download of content purchased from one vendor to another vendor's device would negate the new vendor's ability to be compensated for their services."

42. In addition, the FDC's standard grievance response language simply tells prisoners that their loss of property will be good for them in the long run, stating, "It is unfortunate that the music cannot be transferred, however, we hope that overtime [sic] the family and the inmate will see the added value of the new program."

43. Plaintiff WILBERT R. HURST is a current FDC prisoner who has been, and continues to be deprived of his constitutional rights as a result of the FDC's Multimedia Tablet Program.

44. In March 2014, plaintiff WILBERT R. HURST purchased a digital media player through the FDC's Digital Music Player Program for $99.95 + taxes.

45. Having viewed the FDC's advertisements for its Digital Music Player Program, plaintiff believed that he would "always own" my digital media files purchased by him through the Digital Music Player Program and for use with his digital media player.

46. Relying on this belief, plaintiff subsequently purchased approximately 1300 digital media files. Plaintiff spent $2,311.01 total from Access Corrections including the cost of the MP4 Player, the songs, and accessories.

47. Then, in 2017, despite assurances from the FDC that he would "always own" the digital media files he had purchased, the FDC informed plaintiff, not only that it was terminating the Digital Music Player Program and replacing it with the Multimedia Tablet Program, but also that he would not be permitted to retain any of his lawfully purchased media files, regardless of whether those files were contained on his

9

media player or in his cloud-based library, and even if he chose to purchase a tablet through the FDC's new program, and would instead be forced to surrender his property to the FDC's custody.

48. Plaintiff purchased a tablet from the Multimedia Tablet Program and his digital media player was turned into property here at Wakulla C.I. Annex property sergeant. Plaintiff is now completely deprived of the use and enjoyment of all his lawfully purchased songs. The money he had invested in his digital media files has been effectively stolen from him.

## VI.    STATEMENT OF CLAIMS:
State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V.

49. Plaintiff reasserts and incorporates herein by reference all averments set forth in paragraphs one (1) through forty-eight (48) above.

50. Through its policy as stated in the "Statement of Facts" described herein, Defendant violated the Taking Clause of the Fifth Amendment to the U.S. Constitution made applicable to the State's and their agencies through the Fourteenth Amendment to the U.S. Constitution by taking plaintiff's private property without just compensation

   (a) Plaintiff had a constitutionally protected and fundamental right to property in their purchased digital media files.

   (b) Pursuant to the Taking Clause of the Fifth Amendment to the U.S. Constitution, made applicable to the states and their agencies through the Fourteenth Amendment to the U.S. Constitution, private property shall not be taken without just compensation.

   (c) Through the implementation of the Multimedia Tablet Program, defendant FDC has violated the Taking Clause by taking the private property of prisoners who purchased digital media files without just compensation.

   (d) Plaintiff purchased the digital media files through the Digital Music Player Program with funds from their inmate accounts, and at the time of purchase the digital media files were authorized property for plaintiff to possess.

   (e) Defendant's Multimedia Tablet Program has invaded and interfered with plaintiff's legally protected property interests.

   (f) Defendant has deprived plaintiff of his possessory right, use and enjoyment of the digital media files he purchased through the Digital Music Player Program, without just compensation, through the implementation and enforcement of its Multimedia Tablet Program.

   (g) The Multimedia Tablet Program constituted a direct government appropriation of private property.

   (h) Defendant's Multimedia Tablet Program has resulted in the permanent deprivation of plaintiff's possessory rights, use and enjoyment of the digital media files he purchased through the Digital Music Player Program.

   (i) Defendant's Multimedia Tablet Program was not implemented to address any improper use of the digital media files purchased through the Digital Music Player Program by plaintiff, and was not implemented to address any security concern.

   (j) Plaintiff is entitled to and has not been provided with just compensation for the taking.

   (k) Plaintiff has no adequate state court remedies to redress this taking.

(I) As a direct and proximate cause of Defendant's official policy and actions, Plaintiff has suffered, and will continue to suffer, from the violation of his rights under the Taking Clause of the Fifth Amendment, as plaintiff has already purchased 1,000 plus songs to replace the ones that were taken.

51. Through its policy as stated in the "Statement of Facts" described herein, Defendant violated plaintiff's constitutional rights under the substantive due process clause of the Fourteenth Amendment by implementing the Multimedia Tablet Program that is facially unconstitutional.

- (a). Plaintiff had a constitutionally-protected and fundamental right to property in his purchased digital media files.
- (b). Plaintiff purchased digital media files through the Digital Music Player Program with funds from his inmate account, and at the time of purchase the digital media files were authorized property for plaintiff. Accordingly, plaintiff had a right to the digital media files he purchased through the Digital Music Player Program.
- (c). Defendant has deprived Plaintiff of his possessory rights, use and enjoyment of the digital media files they purchased through the Digital Music Player Program.
- (d). Defendant's Multimedia Tablet Program was not implemented to address any improper use of the digital media files purchased through the Digital Music Player Program by Plaintiff.
- (e). Defendant's implementation and enforcement of the Multimedia Tablet Program was, and is arbitrary and irrational under color of law.
- (f). The Multimedia Tablet Program was implemented in Defendant's legislative capacity, as the program has broad ranging impact for large segments of the FDC population, rather than being directed at a particular person.
- (g). The Multimedia Tablet Program is arbitrary and capricious, does not bear a substantial relation to the public health, safety, morals, or general welfare, had no rational basis, was undertaken for an improper motive, and is therefore an invalid exercise of the police power.
- (h). The Multimedia Tablet Program is facially unconstitutional under the substantive Due Process Clause of the Fourteenth Amendment.
- (i). The deprivation of Plaintiff's property was the result of an abuse of governmental power.

## STATE OF FLORIDA CLAIMS

52. Defendant committed the tort of "Fraudulent Misrepresentation" against plaintiff, in that: a) there was a false statement concerning a material fact; b) the defendant knew the statements were false; c) the defendant intended that another would rely on it; d) plaintiff did in fact rely on it, and e) resulting in a loss of $2311.01 (the value of his lawfully purchased property).

- (a). False statement concerning material facts were made as explained in paragraphs #5, 15 and 18. Because plaintiff was not allowed to have files / songs he paid for from the Digital Music Player Program, transferred to the tablet that was purchased from the Multimedia Tablet Program. Defendant said in paragraph #5 that it was their intent that the new Digital Player Program will have little or no financial impact on inmates ..."; paragraph 15 the defendant claimed, that "once music is purchased, you'll always own it." and paragraph 18 a misrepresentation was made that: "we don't think you should ever have to pay again."
- (b). The defendant knew those were false representations. Because as soon as they acquired a new vendor that would provide a more financially lucrative arrangement for the defendant's benefit,

11

they intentionally reneged on their word. Financial gain was their motive; the inmates were merely the sacrifice in defendant's underlying motive.

(c). The defendant intended to use the false representation to induce FDC inmates and their families to act. The advertisement touted the screen size, the power, the false claims of having a photo option to send and receive photo's, and the false claims of having the ability to send email to family and friends, and placing the advertisement in strategic locations, etc....

(d). And because of the false inducement, plaintiff has lost $2,311.01 because he relied on the representation.

53.  Defendant "Breached the Contract" that permitted plaintiff to have possession of his purchased property, in that, a) there was an existence of a contract; b) there was a material breach of the contract; c) damages resulted from the breach, and d) there was clear and manifest intent of the contracting parties that the contract primarily and directly benefit the third party via possessory rights of purchased product. (Plaintiff has a "Petition for Writ of Mandamus" filed in the Leon County Court in an attempt to get a copy of the contract, from the FDC. Plaintiff has made a good-faith effort to get a copy of the contract since December 2018 as this is a public record. Officials forced me to exhaust the grievance process; currently is pending in court).

(a). There was a contract made between the defendant and "Access Corrections" that would allow FDC inmates to purchase and own media players.

(b). There was a material breach of the contract in that certain benefits were promised / offered by never transpired. The arrangement is inequitable to the senses of any lay person. It virtually amounted to theft.

(c). Damages resulted in that plaintiff loss $2,311.01 because of the contract.

(d). There was a clear or manifest intent of the contracting parties that the contract primarily and directly benefit the 3rd party. As explained above the benefit of the contract to plaintiff was having ownership of the MP4 Player for his enjoyment and the therapeutic purpose of helping cope with the stresses of prison life. Plaintiff has a psychiatric disorder and the music has a calming effect on him.

54.  Defendant violated the "Florida Deceptive and Unfair Trade Practice Act" (FDUTPA) against Plaintiff, in that, a) there was a deceptive act, or unfair practice; b) the unfair practice caused plaintiff to purchase, and c) plaintiff lost the purchased property of the value of $2311.01.

(a). There was a deceptive act or unfair practice in that the defendant through Access Corrections used a contract and other advertisement, marketing and promotional material to induce plaintiff / FDC inmates to purchase a product that said the FDC inmates could keep.

(b). It turned out not to be true because the defendant turned around and confiscated the device without just compensation. As a result, Plaintiff lost $2,311.01.

(c). As a result, plaintiff lost $2311.01.

55.  Defendant committed an act of "Unjust Enrichment," in that, a) there was a benefit of #2311.01 conferred upon defendant by the plaintiff; b) there was an appreciation of the benefit(s) by defendant, and c) there was the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it, without paying the value thereof.

(a). There was a benefit conferred upon defendant by the plaintiff. Plaintiff spent $2,311.01 on products that directly benefited the defendant through commissions / financial gain.

(b). The defendant appreciated the benefit which would be common sense to a layperson. Because money has purchasing power.

(c). The defendant accepted and retained the benefit in the sum of $1.4 million. Plaintiff had spent $2,311.01 and the defendant took it without just compensation. Without payment the transaction is inequitable.

56.    These actions are essentially theft, and breach of contract, and as such, shock the conscience.

57.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under the Constitution of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under color of state law, of rights secured to Plaintiff.

58.    Plaintiff's claims for relief are predicated in part, upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys fees and costs to prevailing plaintiff in action brought pursuant to 42 U.S.C. § 1983.

59.    Declaratory and injunctive relief is authorized by 28 U.S.C. § § 2201 and 2202, as well as Rules 57 and 65 of the Fed.R.Civ.P.

60.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 1391(c) as Defendant MARK S. INCH does business in this judicial district and division.

61.    The Court has supplemental jurisdiction over plaintiff's state law tort claims under 28 U.S.C. § 1367.

## VII.    RELIEF REQUESTED:

62.    State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/statutes.

WHEREFORE, plaintiff demands judgment in his favor and against defendant. Request an order to do the following:

A    Finding and declaring that Defendant has violated the Taking Clause of the Fifth Amendment to the U.S. Constitution through its implementation of the Multimedia Tablet Program;

B    Finding and declaring that Defendant has violated the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution by violating the substantive due process rights of Plaintiff through its implementation of the Multimedia Tablet Program;

C    Prohibiting defendant from implementing deceptive policies in the future;

D    Granting plaintiff the total cost of what he had already spent purchasing the Digital Media Player; the digital media files / songs and for the accessories that was purchased by him through the Digital Music Player Program - to assure just compensation - which is for the reimbursement of $2,311.01.

| | |
|---|---|
| E | Awarding Plaintiff attorney fees, and cost pursuant to 42 U.S.C. § 1988; |
| F | Granting compensatory and punitive damages as the supplemental claims permit under the State of Florida and / or Federal law. |
| G | A jury trial on all issues triable by jury. |
| H | Granting such and further relief as this Honorable Court deems appropriate. |

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**

July 19, 2019
(Date)

(Signature of Plaintiff)

**IF MAILED BY PRISONER:**

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one): [ ✓ ] delivered to prison officials for mailing or [ ] deposited in the prison's internal mail system on: the 19th day of July, 2019.

(Signature of Plaintiff)

Revised 03/07

Wilbert R. Hurst, U22029
**WAKULLA CI - ANNEX**
110 MELALEUCA DRIVE
CRAWFORDVILLE, FL 32327



United States District Court
Northern District of Florida
Office of the Clerk
111 North Adams St., Suite 322
Tallahassee, FL 32301-7717

LEGAL MAIL

LEGAL MAIL
Provided to
Wakulla CI

JUL 19 2019

FOR MAILING ___ UP WH