IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILBERT R. HURST,

    Plaintiff,

v.                                                        CASE NO. 4:19-cv-234-RH-GRJ

KEEFE COMMISSARY NETWORK, LLC,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Pending before the Court is Defendant Keefe Commissary Network's ("KCN") Amended Motion to Dismiss, ECF No. 56.[1] Plaintiff, who is proceeding *pro se*, has failed to file any response to KCN's Amended Motion to Dismiss notwithstanding the requirement that he do so, N.D. Fla. Loc. R. 7.1(E), and an extended deadline since the motion was filed and served on December 30, 2020, *see* ECF No. 61 (order dated March 15, 2021, directing the Clerk to renew service of the Amended Motion to Dismiss on Plaintiff and permitting him to file any response by April 5, 2021). This typically warrants granting the instant motion by default. N.D. Fla. Loc. R. 7.1(H).

---

[1] KCN's initial Motion to Dismiss, ECF No. 51, is due to be **TERMINATED as moot**.

The motion, nevertheless, is ripe for consideration. As explained below, KCN raises a compelling argument for the transfer of Plaintiff's claims because they were filed in the wrong forum. Therefore, it is respectfully **RECOMMENDED** that KCN's Amended Motion to Dismiss should be **GRANTED** to the extent this case should be **TRANSFERRED** to the Eastern Division of the Eastern District of Missouri.

## I.  BACKGROUND

Plaintiff is an inmate in the custody of the Florida Department of Corrections ("DOC"), serving a prison sentence of life without parole since 2004 for convictions in Lake County.[2] DOC contracted with Defendant KCN (a commissary vendor doing business as "Access Corrections") "in or about 2014" for KCN to manage the Department's Digital Music Player Program. ECF No. 40 at 5.

As Plaintiff explains, the purpose of the Digital Music Player Program "was to provide a secure method by which [DOC] prisoners could browse, select, purchase[,] and download digital content to specialized digital mediate (MP3/MP4) players made explicitly for use by inmates in a

---

[2] The Court may take judicial notice of facts available in the public record without converting a motion to dismiss into a motion for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Halmos v. Bomardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010).

correctional setting." *Id.* Inmates could purchase digital media players, various accessories, and digital media files using funds from their inmate accounts. *Id.* at 6. Inmates purchased music files using blocks of "media credits," which cost at least $8.50 each, by connecting their digital media player to a kiosk at each DOC institution. *Id.* Inmates participating in the Digital Music Player Program maintained a limitless cloud-based library for purchased media files and could transfer files from the cloud to the digital media player using the kiosks. *Id.* And, as a security measure, inmates were required to connect their digital music player to a kiosk every 30 (or later 90) days to prevent the device from locking. *Id.*

DOC and KCN promoted the Digital Music Player Program by publishing and posting numerous advertisements at various DOC institutions and in specific locations, such as the visitation area for family members, canteen windows, and housing areas. *Id.* One such advertisement included the representation that "[o]nce music is purchased you'll always own it!" *Id.* at 7. Moreover, the user guide for the digital media players advised inmates that they will not have to pay for a song more than once. *Id.*

Plaintiff says that between March 26, 2014, and July 5, 2017—based on the representations of DOC and KCN about the Digital Music Player

3

Program—he spent $2,311.01 on a digital media player, an armband, screen protectors, and media credits. *Id.* at 5–7. Plaintiff, however, was not alone in this decision. He contends the Digital Music Player Program was a financial success for DOC and KCN, namely that DOC realized about $1.4 million in sales commissions. *Id.* at 7.

In April 2017, however, DOC terminated its contract with KCN in favor of a new venture with a competing vendor, JPay, Inc. *Id.* at 8. The Multimedia Tablet Program provided a similar sales structure to the Digital Music Player Program, but DOC directed inmates who participated in the Digital Music Player Program to surrender their digital media players and advised them they would lose access to their purchased digital media files. *Id.* In January 2018, DOC prevented inmates from accessing their cloud-based libraries. *Id.*

Inmates were left with a few options to retain the property they purchased in the Digital Music Player Program. *Id.* An inmate could mail his or her digital media player to KCN to have the security timer removed, and KCN would mail the unlocked media player to someone outside the prison for a fee of $24.95. *Id.* Or an inmate could pay KCN a fee of $24.95 to have the digital media files transfer to a CD and mailed to a non-prison address. *Id.* Either way, DOC required prisoners to surrender their digital

media players when they purchased a new tablet under the Multimedia Tablet Program or by January 23, 2019.  *Id.*

The gravamen of Plaintiff's Second Amended Complaint is his contention that DOC and KCN have deprived him of "the use and enjoyment of all his lawfully purchased songs."  *Id.* at 10.  Plaintiff raises a constitutional claim against KCN under the Fifth Amendment's Takings Clause and 42 U.S.C. § 1983, as well as state-law claims for fraudulent misrepresentation and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204(1).  *Id.* at 10–13.  As to relief, Plaintiff seeks a declaration that KCN violated the Takings Clause, an injunction against KCN from "implementing deceptive policies in the future," and compensatory and punitive damages.  *Id.* at 14.

Plaintiff also raised claims against DOC Secretary Mark Inch, *id.* at 10–13, but the district court recently dismissed them, ECF No. 62.  The district court held that Plaintiff's claims against Secretary Inch were precluded because Mr. Hurst was a member of a certified class action against the Secretary, *see Demler v. Inch*, No. 4:19-cv-94 (N.D. Fla.), and, as such, is bound by a judgment in that case.  *Id.* at 2–3.  The settlement injunction entered in *Demler*, pursuant to Federal Rule of Civil Procedure 23(b)(2), afforded Plaintiff and other class members credits to purchase a

multimedia tablet and media credits.  The district court emphasized that Plaintiff was "not entitled to an injunction requiring the Department to provide more" than what the other *Demler* class members received and that "he is not entitled to an award of damages against the Department or the Secretary[.]"  *Id.* at 3.

## II.  DISCUSSION

KCN advances numerous grounds for the dismissal of the remainder of Plaintiff's claims concerning the Digital Music Player Program, but, upon consideration, the Court need only address two.  Although Plaintiff's claims against KCN are not barred by *res judicata*, this case is due to be transferred to another federal court based on a valid and enforceable forum-selection clause entered by the parties.

### A.   Claim Preclusion

KCN argues that Plaintiff's claims against it are precluded by the resolution of the *Demler* class action and the *Demler* Settlement Agreement. ECF No. 56 at 6–12.  KCN points to numerous cases that it says stand for the principle that a member of a certified class may not bring an individual suit to raise identical claims.  *Id.* at 8–10 (citing *United States v. Nodler*, 749 F.2d 1128, 1131 (5th Cir. 1984); *Goff v. Menke*, 672 F.2d 702, 704–06 (8th Cir. 1982)).

6

"The doctrine of *res judicata*, or claim preclusion, bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990).[3]  There are four elements to establish claim preclusion: "(1) there must be a final judgment on the merits[;] (2) the decision must be rendered by a court of competent jurisdiction[;] (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved both cases." *Id.*

The first and second elements are easily satisfied.  The Court's "Final Approval Order" in *Demler* was a final judgment on the merits because it dismissed the claims in that action with prejudice, ECF No. 998 at 5. *Citibank*, 904 F.2d at 1501.  And there is no dispute that this Court had subject-matter jurisdiction over the claims in issue in *Demler* or personal jurisdiction over Secretary Inch.

As to the third element, it is obvious that the parties in this case and the *Demler* class action are not identical.  KCN was not a defendant in *Demler* but it now attempts to invoke the preclusive effect of that final

---

[3] "Although *res judicata* is not a defense under Rule 12(b), and generally should be raised as an affirmative defense under Rule 8(c), … it may be raised in a Rule 12(b)(6) motion where the existence of the defense can be determined from the face of the complaint." *Solis v. Glob. Acceptance Credit Co., L.P.*, 601 F. App'x 767, 771 (11th Cir. 2015).  Here, the district court may properly consider its own records in deciding Defendant's motion to dismiss. *Id.*

judgment. Therefore, KCN must demonstrate that it was in privity with Secretary Inch (or, as a practical matter, the DOC).

The Supreme Court has noted that the term "privity" eludes any precise definition. *Taylor v. Sturgell*, 553 U.S. 880, 894 n. 8 (2008). It is, at least, "a substantive legal relationship[] justifying preclusion" or, more broadly, "a way to express the conclusion that nonparty preclusion is appropriate on any ground." *Id.* The Eleventh Circuit has held that privity may exist in an employer-employee or principal-agent relationship where the "party seeking [the benefit of claim preclusion] is related by vicarious liability or *respondeat superior* to a defendant in a prior lawsuit." *Citibank*, 904 F.2d at 1502–03.

Other circuits have observed that the existence of a contractual relationship between two persons or entities can establish privity to support claim preclusion. *See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310–11 (3d Cir. 2009) ("Privity has traditionally been understood as referring to the existence of a substantive legal relationship, such as by contract, from which it was deemed appropriate to bind one of the contracting parties to the results of the other party's participation in litigation."); *Pelt v. Utah*, 539 F.3d 1271, 1290 (10th Cir. 2008) (examining

whether the defendant alleged "a fiduciary, contractual[,] or property relationship between current and prior litigants").

Although Plaintiff's Second Amended Complaint acknowledges the existence of a contract between DOC and KCN concerning the administration of the Digital Music Player Program, ECF No. 40 at 5, and there is some persuasive authority that such a contract would support a finding of privity, *see, e.g.*, *Glenn v. Mataloni*, No. 1:20-cv-69, 2020 WL 7027597, at *12 (M.D. Pa. Nov. 30, 2020); *Kinard v. Centurion of Fla., LLC*, No. 3:19-cv-490-J-34-JRK, 2020 WL 3542650, at *12 (M.D. Fla. June 30, 2020); *McCarroll v. U.S. Fed. Bureau of Prisons*, No. 3:11-cv-934 (VLB), 2012 WL 3940346, at *9 (D. Conn. Sept. 10, 2012), KCN fails entirely to address this essential element of claim preclusion. Therefore, the Court is not inclined to make the argument on KCN's behalf. *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998).[4]

In any event, KCN's argument for claim preclusion fails on the fourth element—an identity of claims. Typically, "suits involve the same claim (or

---

[4] *See also Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point."); *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) ("The premise of our adversarial system is that … courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.").

'cause of action') when they arise from the same transaction or involve a common nucleus of operative facts." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1595 (2020) (cleaned up); *see also Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1289 (11th Cir. 2007) ("Claim preclusion applies not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact.").

This test does not apply, however, where a plaintiff seeks an award of individual damages even if he or she was a representative or member of a certified injunction class action under Rule 23(b)(2).[5] According to the Eleventh Circuit, "[i]t is clear that a prisoner's claim for monetary damages or other particularized relief is not barred if the class representative sought only declaratory and injunctive relief, even if the prisoner is a member of the pending class actions." *Fortner v. Thomas*, 983 F.2d 1024, 1031 (11th Cir. 1993). Indeed, this is the prevailing view of federal courts. *See Hoffer v. Jones*, No. 4:17-cv-214-MW-CAS, 2018 WL 11303801, at *1 n.1 (N.D. Fla. Apr. 13, 2018) (citing *Fortner* in support of the representation to one potential injunctive class member that "nothing that happens in this case

---

[5] *See AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1174 (11th Cir. 2019) (discussing the difference between injunction classes under Rule 23(b)(2) and damages classes under Rule 23(b)(3)).

will preclude [him] (or any other class member) from filing his own action for damages"); *Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 81 (M.D. Tenn. 2004) (collecting cases); William B. Rubenstein, 6 *Newberg on Class Actions* § 18:18 (5th ed. 2021) ("[T]he reported cases almost uniformly reject the conclusion that the injunctive class suit claim precludes later money damage actions by class members.").

Here, the final judgment in *Demler*, which stemmed from the certification and settlement of a Rule 23(b)(2) injunction class, does not preclude Plaintiff's individual claims for damages against KCN. Therefore, dismissal of those claims based on *res judicata* is not warranted.

The Court is not persuaded by KCN's arguments to the contrary. For starters, the cases cited by KCN do not support preclusion. For example, in *Goff v. Menke*, the Eighth Circuit held it was error to grant "class-wide relief or any relief when the issues had already been preliminarily resolved and were pending final resolution in a class action to which plaintiff, as a class member, was a party." 672 F.2d 702, 704 (8th Cir. 1982). But in so doing, it recognized an important distinction for individual damages:

> After rendition of a final judgment, a class member is ordinarily bound by the result of a class action. This court has on several occasions refused to allow prisoners to relitigate issues decided in prior class actions. If a class member cannot relitigate issues raised in a class action after it has been resolved, a class member should not be able to prosecute a separate equitable

11

> action once his or her class has been certified.  If class members seek individual money damages, the district court can dispose of those claims on an individual basis.

*Id.*  Likewise, the Fifth Circuit in *Gillespie v. Crawford* prohibited "[s]eparate individual suits … maintained for equitable relief from allegedly unconstitutional … prison conditions" because they would "interfere with the orderly administration of the class action and risk inconsistent adjudications."  858 F.2d 1101, 1103 (5th Cir. 1988).

At bottom, there is no risk of interference with or inconsistent adjudications from the *Demler* class action because this is not a separate equitable case.  Plaintiff seeks individual damages and, in part, distinct declaratory relief from KCN, which *Goff*, *Gillespie*, and the other cases cited by KCN do not bar a prisoner from obtaining.

What's more, KCN's contention that the *Demler* Settlement Agreement supports dismissal is untenable.  The Settlement Agreement addresses "Released Claims," which the Agreement defined as "all claims raised in this action and all other claims…, whether known or unknown, arising out of the Digital Music Confiscation Policy, that were or could have been raised, against the Defendant in this action."  ECF No. 965-1 at 5–6, 8.  In the same vein, the Supplemental Class Notice—provided to prisoners such as Plaintiff—advised members of the class that they would be bound

by the settlement and "will waive and release all claims against the FDOC arising out of the Digital Music Player Program[,]" ECF No. 965-3 at 3, and the Court's Final Approval Order directs the dismissal of current claims and the preclusion of outstanding or future claims against Secretary Inch (or, as a practical matter, the DOC), ECF No. 998 at 5.  And even if it were true, as KCN asserts, that "every claim against KCN is identical to and a duplicate of the claims against [DOC]," ECF No. 56 at 10–11, that does not mean Plaintiff's claims would be precluded.  See Hart v. Yamaha-Parts Distribs., Inc., 787 F.2d 1468, 1473 (11th Cir. 1986) ("YMC/USA and Yamaha International are not in privity merely because appellant makes identical claims against them.  When a person suffers injury as the result of the concurrent or consecutive acts of two or more persons, he has a claim against each of them.").  The disposition of the Demler class action protects Secretary Inch, the DOC, and the State of Florida—but not KCN—from further litigation concerning the Digital Music Player Program.

In sum, Plaintiff's claims for damages against KCN are not precluded by the final judgment in the Demler class action.  KCN has failed to establish an identity of parties between the two suits.  And the claims are not identical because Plaintiff is seeking individual damages from KCN, which the class was barred from pursuing in Demler.

### B. Forum-Selection Clause

KCN's next challenge is to the Plaintiff's choice of venue. ECF No. 56 at 12–13. KCN argues that Plaintiff is bound by a forum-selection clause in an End User Agreement ("EUA") for the Digital Music Player Program, which states that "[a]ny claim or controversy in any way arising out of or relating to this terms of sale will be filed in a court of competent jurisdiction sitting in St. Louis county Missouri and you consent to exclusive jurisdiction in that county." ECF No. 56-1 at 5.[6] KCN seeks dismissal of this case for improper venue or transfer to the proper forum. ECF No. 56 at 12.

The Court begins with the presumption that a forum-selection clause is valid and enforceable unless the plaintiff makes a "strong showing that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). Because Plaintiff has not shown that enforcement would be unfair or

---

[6] KCN says that Plaintiff refers to the EUA in the Second Amended Complaint, specifically in his claim for breach of contract against Secretary Inch. ECF No. 56 at 3 (citing ECF No. 40 at 12). Nevertheless, the Court may consider this document to determine whether the forum-selection clause governs in this dispute. *Cleveland v. Kerzner Int'l Resorts, Inc.*, 657 F. App'x 924, 925 (11th Cir. 2016); *Decurtis LLC v. Carnival Corp.*, No. 6:20-cv-607-Orl-40LRH, 2020 WL 6079232, at *6 (M.D. Fla. July 15, 2020); *Newco Energy Acquisitions Holdings, LLC v. Shulgen*, No. 12-81249-CIV, 2013 WL 12149763, at *2 (S.D. Fla. Mar. 28, 2013) (citing *Liles v. Ginn-Law W. End, Ltd.*, 631 F.3d 1242, 1244 n.5, 1249 n.13 (11th Cir. 2011)). The undersigned has previously addressed the terms of the EUA in *Mendoza v. Inch*, No. 4:18-cv-66-RH-GRJ, ECF No. 162 (N.D. Fla. Feb. 19, 2021).

unreasonable—in fact, he has failed to offer any response to KCN's motion—there is no basis for the Court to hold the forum-selection clause is invalid or unenforceable.

"Beyond validity, in analyzing the application of a forum-selection clause a court must determine whether the claim or relationship at issue falls within the scope of the clause—by looking to the language of the clause itself—and whether the clause is mandatory or permissive." *Blue Ocean Corals, LLC v. Phoenix Kiosk, Inc.*, No. 14-CIV-61550, 2014 WL 4681006, at *4 (S.D. Fla. Sept. 19, 2014). The Court concludes that Plaintiff's constitutional and state-law claims against KCN fall within the scope of the broad forum-selection clause. *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330–31 (11th Cir. 2011); *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003). Moreover, the forum-selection clause—which provides for "exclusive jurisdiction" in St. Louis County—is mandatory. *Glob. Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004).

This leaves only the issue of enforcement. The Supreme Court has held that "Section 1404(a) … provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S.

49, 59 (2013).[7]  In turn, Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Typically, a district court "must evaluate both the convenience of the parties and various public-interest considerations … weigh the relevant factors[,] and decide whether, on balance, a transfer would serve the convenience of parties and witnesses and otherwise promote the interest of justice." *Atl. Marine*, 571 U.S. at 62–63.  However, "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* at 63.  "First, the plaintiff's choice of forum merits no weight." *Id.*  "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* at 64.  In other words, "a district court may consider arguments about public-interest factors only." *Id.*  "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a §

---

[7] "The appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine*, 571 U.S. at 60.

16

1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* "[T]he practical result is that forum-selection clauses should control except in unusual cases." *Id.*

The Court concludes that this case should be transferred in accordance with the forum-selection clause. The parties have consented to an exclusive jurisdiction outside of this district, and no public interest factors militate against enforcement of the forum-selection clause. Indeed, a forum-selection clause is a contract, *P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003), and "it is a matter of great public concern that freedom of contract be not lightly interfered with," *Steele v. Drummond*, 275 U.S. 199, 205 (1927). *See also GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) ("[A]n enforceable forum-selection clause carries near-determinative weight."). And notably, Plaintiff has waived the right to challenge the convenience of the pre-selected forum for himself, his witnesses, or his pursuit of this litigation. *Atl. Marine*, 518 U.S. at 64.

In sum, the forum-selection clause in the EUA is valid and enforceable. In view of the modified § 1404(a) analysis set forth in *Atlantic*

*Marine*, this case is due to be transferred to the federal court sitting in St. Louis County, the Eastern Division of the Eastern District of Missouri.[8]

### III.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that KCN's Amended Motion to Dismiss, ECF No. 56, should be **GRANTED** to the extent this case should be **TRANSFERRED** to the Eastern Division of the Eastern District of Missouri.[9]

**IN CHAMBERS** this 15th day of June 2021.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy**

---

[8] It bears mentioning that transfer of this case under § 1404(a), rather than dismissal under the *forum non conveniens*, doctrine is appropriate for two reasons. First, KCN has requested transfer. ECF No. 56 at 13. Second, a number of courts have held that a district court should transfer an action to an appropriate federal court even when the forum-selection clause in issue permits the plaintiff to have filed his action in the state or federal court of a particular jurisdiction. *See Graham v. Rapid Auto Loans, LLC*, No. 8:20-cv-2758-T-33AEP, at *3 (M.D. Fla. Jan. 7, 2021) ("As the forum selection clause specifies that venue may properly lie in the Southern District of Florida, Fort Lauderdale Division, the Court transfers the case there."); *Am. Spirit & Cheer Essentials, Inc. v. Varsity Brands, LLC*, No. 1:20-cv-03088-SCJ, at *9 (N.D. Ga. Oct. 27, 2020) ("When a forum selection clause would allow a transfer to a sister federal court, the court should transfer and not dismiss the case even if the clause would have allowed a party to have filed the case in the state court of the selected forum.").

[9] KCN's initial Motion to Dismiss, ECF No. 51, is due to be **TERMINATED as moot**. Further, the **Clerk** is directed to mail to Plaintiff a copy of this report and recommendation at the Wakulla C.I. Annex, 110 Melaleuca Drive, Crawfordville, Fla., 32327-4963.

thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.